[Cite as *In re M.P.*, 2014-Ohio-1655.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

M.P. AND C.S.,

DEPENDENT CHILDREN

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. Patricia A. Delaney, J.

Case No. 2013AP120058, and
2013AP120059

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Court, Case No. 12JN00433 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 16, 2014 |
| APPEARANCES: | |

For Appellee

JEFFREY KIGGANS
Department of Job & Family Services
389 Sixteenth Street SW
New Philadelphia, Ohio 44663


Guardian for John Pintarich

SHARON BUCKLEY-MIRHAIDARI
152 North Broadway, Suite 200
New Philadelphia, Ohio 44663


For Appellant James Smitley

ADAM WILGUS
401 Tuscarawas Street W. - Suite 200
Canton, Ohio 44702

For Mother

JOHN BRECHBILL
Assistant Public Defender
153 N. Broadway
New Philadelphia, Ohio 44663


Guardian ad Litem

DAVE DEIBEL
6545 Market Ave. N.
North Canton, Ohio 44721

*Hoffman, P.J.*

{¶1}   In Tuscarawas App. No. 2013 AP 12 0058, Appellant James Smitley ("Father") appeals the November 18, 2013 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated his parental rights, privileges, and responsibility with respect to his minor child, and granted permanent custody of the child to Appellee Tuscarawas County Jobs and Family Services ("TCJFS").   In Tuscarawas App. No. 2013 AP 12 0059, Appellant Kristen Smitley ("Mother") appeals the same judgment entry as it relates to the termination of her parental rights, privileges, and responsibilities.

STATEMENT OF THE FACTS AND CASE

{¶2}   Mother and Father (collectively, "Parents") are married and are the biological parents of C.S. (dob 3/21/12).[1]   On September 12, 2012, TCJFS filed a Complaint for Dependency and Change of Custody due to concerns regarding Mother's mental health.   Mother had been living with Father and C.S. at the home of Cathy Smitley, Father's mother.   However, due to an incident which occurred over Labor Day weekend, Father had received a protection order protecting himself and C.S. against Mother. Mother was without a residence as a result.   TCJFS requested C.S. be placed in the sole temporary custody of Father.

{¶3}   Following an adjudicatory hearing on October 10, 2012, the trial court ordered Mother and Father to submit to psychological evaluations.   The trial court also ordered C.S. remain in the temporary custody of Father under the protective supervision

---

[1] TCJFS's involvement with the family included another child, M.P., who was ultimately placed in the legal custody of her biological father.  M.P. is not subject to this Appeal.

of TCJFS. In addition, the trial court granted Mother supervised visitation with C.S. at the TCJFS facility. Subsequently, on October 15, 2012, the trial court reviewed the matter under Juv. R. 6, and ordered C.S. be immediately removed from Father's home and placed in substitute care. The trial court granted Father supervised visitation with C.S. at the TCJFS facility.

{¶4} The trial court conducted an adjudicatory hearing on November 8, 2012, at which time Mother and Father stipulated to a finding of dependency. The trial court placed C.S. in the temporary custody of TCJFS, and approved and adopted the case plans for Parents. C.S. was placed in the temporary custody of a paternal uncle and aunt. The trial court subsequently granted temporary custody of C.S. back to TCJFS because his paternal uncle and aunt were no longer able to keep the child in their home and were unable to pursue legal custody.

{¶5} On September 10, 2013, TCJFS filed a motion for permanent custody. The trial court conducted a hearing on the motion on November 7, 2013.

{¶6} Elizabeth Benedetto, an ongoing caseworker with TCJFS, testified regarding Father and Mother's compliance with their case plans. With respect to Father, Benedetto stated he was terminated on two occasions from parenting classes, but finally completed the class on his third attempt. Father completed a psychological evaluation. Father also completed a drug and alcohol assessment, but disagreed with the results. Father completed a second drug and alcohol assessment at another facility. He initially participated in the recommended intensive outpatient therapy program. Father tested positive for benzodiazepine and opiates at his third meeting. Father had not provided valid prescriptions for these drugs. Thereafter, Father quit attending the

program.  A third assessment was scheduled at yet another facility, but Father failed to go to the appointment.  Father was employed at Lowes in New Philadelphia, between December, 2012, and April, 2013.  Father was unable to work for a period of time following a hospitalization.  Father informed Benedetto he was looking into social security disability.

{¶7}    Father's visits with C.S. were suspended on two occasions during the course of the matter due to missed appointments.  Despite Father's case plan requiring he have no involvement with law enforcement, Father had had monthly contact with either the Sheriff's Department or the New Philadelphia Police Department since September, 2012.  Father was granted two protection orders against Mother during the case, but dropped both.  Father and Mother's relationship was dysfunctional.  For a time, they attended marriage counseling, but neither could make a decision as to the fate of the relationship.

{¶8}    Father reported he had presented at Barberton Hospital with suicidal thoughts the month before the hearing.  At Father's request, the hospital set up counseling services and a drug and alcohol assessment.  However, he did not attend any of the scheduled appointments.

{¶9}    With respect to Mother, Bendetto testified Mother completed her parenting classes and her psychological assessment.  Mother reported she was seeing a counselor at Community Mental Healthcare on a regular basis.  When Bendetto requested confirmation in writing, Mother told her (Bendetto) the counselor had released her (Mother) from therapy.  However, Mother had actually been terminated.  Mother recommenced counseling with Community Mental Healthcare, but only attended for

three or four sessions.  Mother reported attending marriage counseling, but Bendetto did not have verification of such.

{¶10} Mother was employed as a telemarketer for a fairly significant time. Although unemployed at the time of the hearing, Mother informed Bendetto she was actively looking and had sent out her resume.

{¶11} The trial court suspended Mother's visits with C.S. from February, 2013, until May, 2013.  After three additional missed visits, the trial court again suspended visitation in July, 2013.  As of the date of the hearing, Mother had not visited C.S. since July.

{¶12} Mother was arrested in January, 2013, for DUI and driving under suspension.  Mother was also arrested once or twice for violating the protection order Father had against her.

{¶13} Bendetto also testified as to best interest.  C.S. had been placed with a paternal uncle and aunt, but the placement did not work out.  C.S. was currently in a foster home.  The foster family has two biological children who are 10 and 13 years old. C.S. receives a lot of attention.

{¶14} Via Judgment Entry filed November 18, 2013, the trial court terminated Father and Mother's parental rights, privileges, and responsibilities, and granted permanent custody of C.S. to TCJFS.  The trial court found C.S. cannot and should not be placed with either parent within a reasonable time, and it was in C.S.'s best interest to grant permanent custody to TCJFS.

{¶15} It is from this judgment entry Father appeals in Tuscarawas App. No. 2013 AP 12 0058, assigning as error:

{¶16} "I. WHETHER THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶17} "II. WHETHER THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶18} Mother appeals the same in Tuscarawas App. No. 2013 AP 12 0059, raising as error:

{¶19} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS SAID DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. "

{¶20} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

FATHER I, II

MOTHER I

{¶21} We elect to address Father's two assignments of error and Mother's assignment of error together. In his first assignment of error, Father maintains the trial court's finding C.S. could not be placed with him within a reasonable time was against the manifest weight and sufficiency of the evidence. In his second assignment of error, Father contends the trial court's finding an award of permanent custody was in the best

interest of C.S. was against the manifest weight and sufficiency of the evidence. In Mother's sole assignment of error, Mother argues the trial court erred in awarding permanent custody to TCJFS as said decision was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

{¶22} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶23} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶24} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who

are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶25}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶26}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶27}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the

factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶28}** As set forth in our statement of the facts and case, supra, we find there was both sufficient and substantial competent evidence Father and Mother failed to remedy the problems which initially caused the removal of C.S. from their home.  Father and Mother failed to completed important and vital requirements of their case plan.  Neither Father nor Mother followed through with counseling, attending only one or two sessions and then no showing.  Father and Mother's visits were suspended during the pendency of the matter due to missed appointments.  Father did not follow through on his drug and alcohol program.  Further, Parents could not decide the fate of their marriage.  Father and Mother lived in the home of Father's mother, which was not a healthy environment.  Father and Mother had monthly interaction with police due to domestic calls.  Parents both had suicidal ideations or had attempted suicide.

**{¶29}** With respect to the best interest finding, the evidence revealed C.S. was doing well in foster care and the foster family was interested in adopting him.

**{¶30}** Based upon the foregoing, we find the trial court's findings C.S. could not be placed with Father  or Mother within a reasonable time, and an award of permanent custody was in the child's best interest were not against the manifest weight of the evidence and were based upon sufficient evidence.

**{¶31}** Father and Mother also take issue with the trial court's failure to grant a six month extension in order for them to work on their case plans.

**{¶32}** A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See, R.C. 2151.415(D)(1) and (2). Pursuant to R.C.

2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See, *In re McNab,* 5th Dist. Nos.2007 AP 11 0074, 2007 AP 11 0075, 2008–Ohio–1638.

**{¶33}** Parents' assertion an extension of time would allow them to make continued progress on their case plans is belied by their failure to make minimal progress in the year the case was pending. We find the evidence before the trial court supports the conclusion an extension of temporary custody was not in C.S.'s best interest, but, rather, his interest was best served by awarding permanent custody to TCJFS.

**{¶34}** Father's first and second assignments of error, and Mother's first assignment of error are overruled.

{¶35} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur